E. L. ESSLEY MACHINERY COMPANY, Respondent, vs. FIRST TRUST COMPANY, Trustee, Appellant.

*March 3—March 23, 1915.*

*Conditional sale of machinery: Failure to file contract: Validity: Estoppel: Special verdict: Inconsistency: Form of questions: Evidence: Sufficiency: Instructions to jury: Appeal: Harmless errors.*

1. A conditional contract for the sale of personal property, though not filed as required by sec. 2317, Stats., until shortly before bankruptcy proceedings were instituted against the purchaser, is not necessarily void as to unsecured creditors of the latter. *John Deere P. Co. v. Edgar Farmer S. Co.* 154 Wis. 490, followed.

2. Where the vendor did not withhold the filing of such contract because requested to do so by the purchaser nor to avoid injuring the credit of the purchaser, he is not estopped from asserting title as against creditors who did not extend credit to the purchaser on the faith that the property covered by the contract was unincumbered. *Standard P. Co. v. Guenther*, 67 Wis. 101, and *Sanger v. Guenther*, 73 Wis. 354, distinguished.

3. Although the jury found in this case that the purchaser requested the vendor not to file the conditional sale contract, a further finding that the vendor did not withhold the filing because of such request was warranted by the evidence and is not inconsistent with the first finding.

4. Findings by the jury that certain creditors of the purchaser did not extend credit to it upon the faith that the property mentioned in the conditional sale contract was unincumbered, and that such creditors were, by the vendor's failure to file the contract, misled into believing that the property was the unincumbered property of the purchaser, were not inconsistent, it being obvious that the jury intended to find that the credit would have been extended even if the creditors had known the facts as to said contract.

5. The finding that said creditors did not extend credit upon the faith that the property mentioned was unincumbered is *held* to be warranted by the evidence, although the credit men of such creditors testified, with more or less positiveness, that they would not have extended credit had they known of the incumbrance.

6. Although the question in answer to which the jury made the finding last above mentioned might have been made a little clearer, yet it sufficiently submitted, and the jury must have understood, the issue involved, *i. e.* whether or not the credit would have been extended if the creditors had known of the existence of the conditional sale contract.

7. A requested instruction in respect to such question that it was not necessary to an affirmative answer that the creditor so extending credit actually saw the machinery covered by the conditional contract or knew that the particular items of machinery covered thereby were in the debtor's plant, but that it was sufficient if such credit was extended upon the faith that the plant as a whole was the property of the debtor, was substantially correct and might well have been given; but, there being no probability that if it had been given the result would have been different, the error in refusing it was nonprejudicial.

APPEAL from a judgment of the circuit court for Milwaukee county: OSCAR M. FRITZ, Circuit Judge. *Affirmed.*

On or about July 25, 1912, the plaintiff sold the Milwaukee Motor Company machinery of the agreed value of $5,584.50, under a contract by the terms of which possession was to be delivered to the Motor Company, but the title was to remain in the *Machinery Company* until the purchase price was paid as agreed. The conditional sale contract was not recorded until June 13, 1913, on which date the plaintiff brought this action to recover the possession of the machinery sold as aforesaid. The Milwaukee Motor Company was adjudged a bankrupt on June 30, 1913, by virtue of proceedings instituted on the 17th of the same month. The appellant was appointed and qualified as a trustee of the bankrupt on July 25, 1913, and thereafter it was made a party defendant to this action. With the exception of $1,400, the purchase price of the machinery covered by said contract had been paid. The machinery was installed in the plant of the Motor Company, and presumably used from the time of its installation to the time suit was begun. It was the contention of the trustee that, the contract reserving title in the vendor not having been recorded as provided by statute, it was fraudulent and void as to creditors. On the issues raised by the pleadings the following special verdict was returned:

"(1) Did the Milwaukee Motor Company request plaintiff not to file said contract in the office of the clerk of the city of Milwaukee? A. Yes.

"(2) If you answer question No. 1 'Yes,' then answer this

question: Did the plaintiff, because of such request, withhold the filing of said contract until June 13, 1913?  A. No.

"(3) Did the plaintiff withhold the filing of said contract until June 13, 1913, in order not to injure the credit of the Milwaukee Motor Company?  A. No.

"(4) Did Phillip Gross Hardware Company give credit to the Milwaukee Motor Company between July 25, 1912, and June 13, 1913, upon the faith that the property mentioned in said contract was unincumbered property of the Milwaukee Motor Company?  A. No.

"(5) Was the Phillip Gross Hardware Company, in extending credit to the Milwaukee Motor Company between July 25, 1912, and June 13, 1913, misled, by the failure of the plaintiff to file said contract, into believing that the property covered thereby was unincumbered property of the Milwaukee Motor Company?  A. Yes."

Questions 6, 8, 10, and 12 were the same as question 4 except that they applied to different creditors.   They were all answered "No."

Questions 7, 9, 11, and 13 were the same as question 5, except as they applied to the creditors named in questions 6, 8, 10, and 12.   They were answered the same as question 5.

"(14) If the court should be of the opinion that the defendant *First Trust Company* is entitled to recover in this action, then what was the value of the property in question on June 13, 1913?  A. $3,500."

On this verdict judgment was rendered for the plaintiff awarding to it the possession of the machinery covered by the conditional sale contract, and from such judgment the trustee prosecutes this appeal.

For the appellant there were briefs by *Miller, Mack & Fairchild,* and oral argument by *W. F. Adams.*

For the respondent there was a brief by *Harper & McMynn,* and oral argument by *John F. Harper.*

BARNES, J.   1. The appellant insists that the contract was
void as against the creditors of the Motor Company under
sec. 2317, Stats., because not seasonably filed.   This section
provides that no contract for the sale of personal property,
by the terms of which the title is to remain in the vendor and
the possession in the vendee until the conditions of the sale
are complied with, shall be valid as against any other person
than the parties thereto and those having notice thereof, un-
less such contract shall be in writing and shall be filed in the
manner therein prescribed.

The scope, meaning, and purpose of this statute was re-
cently given careful consideration by this court in *John Deere
P. Co. v. Edgar Farmer S. Co.* 154 Wis. 490, 143 N. W. 194,
and it was held that such a contract was not *per se* void as to
unsecured creditors because of failure to file it as the law
provided.   We are satisfied that that case was correctly de-
cided and that it fully meets appellant's first contention.

2. The appellant next claims that the contract was void as
to creditors under the decisions of this court in *Standard P.
Co. v. Guenther,* 67 Wis. 101, 30 N. W. 298, and *Sanger v.
Guenther,* 73 Wis. 354, 41 N. W. 436.   In these cases it was
held that where a mortgagee of chattels refrained from filing
his mortgage at the request of the mortgagor so as not to in-
jure the credit of the latter, and third parties extended credit
to the mortgagor upon the faith that his property was unin-
cumbered, the mortgagee was estopped to claim that his
mortgage was an existing lien on the property thereby covered
as against such creditors.   These cases seem to go upon the
principle that no matter what the intent of the mortgagee
might have been, the arrangement amounted to a fraud in
law and in fact upon the creditors who parted with their
property because of it.   Accepting the second, third, fourth,
sixth, eighth, tenth, and twelfth findings of the jury as be-
ing sustained by the evidence, the appellant has not brought

itself within the rule of the two cases last referred to.   The
jury has found that the plaintiff did not withhold the filing
of its contract because requested to do so by the Motor Com-
pany and that it did not withhold filing in order not to injure
the credit of such company.   It also found that the creditors
named in questions 4, 6, 8, 10, and 12 did not extend credit
to the Motor Company on the faith that the property men-
tioned in the contract was unincumbered.   Accepting these
findings as true, the creditors named did not part with their
property because of any act or omission on the part of the
plaintiff; so the vital element of estoppel that existed in the
cases cited was entirely wanting in the instant case.

3. It is next contended that the answers to questions 2 and
3 of the verdict are inconsistent with the answer to question 1,
and that they should have been set aside for this reason.

The trade was made by Mr. McDonald, representing the
plaintiff, and Messrs. Warner and Kaiser, representing the
Motor Company.   Warner and Kaiser testified that they re-
quested McDonald not to file the contract, and stated with
less positiveness that McDonald agreed not to do so.   Mc-
Donald testified that no such conversation occurred.   By its
answer to question 1 the jury found that the request was
made.   The argument advanced by appellant is that the jury
in answering question 1 must have accepted the evidence of
Warner and Kaiser and rejected that of McDonald, and that
the evidence would not justify an affirmative answer to ques-
tion 1 and a negative answer to questions 2 and 3, and that
the verdict is at least inconsistent.   The argument cannot
prevail.   While the evidence of Warner and Kaiser is posi-
tive to the point that they made the request, it is by no means
positive on the point that McDonald agreed not to file the
document.   Reading the direct and cross-examination of War-
ner together, it is evident that what he meant to testify to
was that McDonald agreed to the suggestion made because

he did not in express terms repudiate it.    Neither is the evidence of Kaiser very convincing.    He said:

"As near as my recollection is now, we asked Mr. McDonald not to put this contract on file as it would impair our credit.    I don't know just what he said at that time.    I don't know whether he said it was all right or whether he would get information on it.    I do not recollect any particular conversation or words that were used; he simply said that would be all right."

McDonald and Essley, the president of the company, both testified that the instrument was not filed because they did not know that it was necessary to file it in order to fully protect their interest in their property which they had delivered to the Motor Company.    There was plenty of evidence to warrant the jury in answering questions 2 and 3 as they did, and the answers are not inconsistent with the answer to question 1.

4. It is next argued that the answers returned to questions 4, 6, 8, 10, and 12 are inconsistent with the answers to questions 5, 7, 9, 11, and 13.

By the answers to the even-numbered questions above enumerated the jury found that certain creditors of the Motor Company did not extend credit to it between July 25, 1912, and June 13, 1913, upon the faith that the property mentioned in the conditional sale contract was unincumbered.    By the answers to the odd-numbered questions the jury found that the creditors referred to in the even-numbered questions were, by the plaintiff's failure to file its contract, misled into believing that the property covered thereby was the unincumbered property of the Motor Company.

The court did not charge the jury in reference to questions 4 to 13 inclusive.    It seems rather obvious that the jury intended to find as to each of the creditors named that it did not know of the existence of the plaintiff's contract and

supposed when it made its sale that the machinery in the factory was unincumbered, but that the sales would have been made by the creditors had each and every of them been conversant with the exact facts. The use of the word "misled" in the odd-numbered questions was not a particularly happy one, and had the word *"led"* been used instead, it would have been better. There is often a great difference between being "led" and "misled." Where one is only being "led" or "misled" into a belief, however, it does not matter much which it is, so long as the belief is not acted on or relied on. If the answers to the questions mean and were understood and intended to mean what we think they do, there is no inconsistency between them.

5. It is further contended that the answers to the even-numbered questions referred to should be set aside because contrary to the undisputed evidence.

The credit men of the five creditors named in these questions testified in substance, with more or less positiveness, that they would not have extended credit had they known of the plaintiff's incumbrance. In the nature of things such evidence could not be contradicted directly. It set forth a state of mind, or, rather, what the witness presently thought he would have done on a former occasion had he known a certain fact. But there were a number of circumstances that indicated that hindsight might have had much to do with the formation of the belief expressed. Most if not all of these creditors had been doing business with the Motor Company long before this machinery was sold. There was a recorded mortgage for about $20,000 against the plant, which was a large one. They all knew of the credit rating of the Motor Company, and knew little about the specific items of machinery in the plant. Some of them at least knew of some of the contracts which the Motor Company had for the sale of its product. The total claims filed against the bankrupt exceeded $550,000; so that the matter of a conditional sale to

it of property worth less than $6,000 would not be likely to very largely influence the lines of credit which were being extended. Without discussing in detail the various considerations which might lead the jury to answer these questions as they were answered, we are satisfied that the conclusions reached have sufficient support in the evidence.

6. It is further contended that the even-numbered questions referred to were improperly framed, and that the inquiry should have been: "Did creditors of defendant Milwaukee Motor Company give credit to said company between July 25, 1912, and June 13, 1913, upon the faith that said machinery, *as a part of the company's plant,* was the property of said company?" The appellant requested that this form of question be submitted in lieu of that used.

There is some ground for criticising the form of the even-numbered questions referred to. There is the possibility that the jury might have understood that the questions should be answered in the negative unless they found that the sole consideration which induced the making of the sales was the fact that the particular property covered by the contract of sale was unincumbered. This objection is pretty far-fetched and is as applicable to the form of question requested by the appellant as it is to that used.

The position of the creditors on the trial was that they were patrons of R. G. Dun & Company; that if the sale contract had been filed they would have been advised of it by that company; and that, had they been so advised, they would have refused to extend the credits which they did extend. There could hardly be any doubt in the minds of the jurors or any one else that question 4 and kindred questions were intended to put the last proposition above stated before the jury. The inquiry was: Would these creditors have extended the credits which they did had they known of the existence of plaintiff's contract? Had the contract been filed the creditors would have had notice of it. If they had, would they

have done as they did or would they have refused to part with their goods? If they would have extended the credits whether or no, they were not injured by failure to file. If this issue was not covered by the questions submitted it was not covered by the form of question requested, and the jury has not passed on it at all, in which case we must presume the necessary findings by the court to support the judgment. However, it is our judgment that, while the even-numbered questions might have been made a little clearer, they were designed to present the proper issue, and that the jury must have fully understood the issue involved.

7. In connection with questions 4, 6, 8, 10, and 12 the defendant requested the following instruction, which was refused:

"In order to answer any of these questions 'Yes,' it is not necessary that the creditor so extending credit actually saw the machinery covered by the contract or knew that the particular items of machinery covered by the contract were in said plant. It is sufficient if you find that such credit was extended upon the faith that the plant as a whole was the property of Milwaukee Motor Company."

This instruction was substantially correct and might well have been given. We think, however, that there is hardly a remote possibility that the result would have been different had the instruction been given, and the refusal to give it must be held nonprejudicial error.

Complaint is made about the refusal to give another requested instruction and about certain rulings on the admission of testimony. It would serve no useful purpose to discuss these assignments of error in detail. They are not well taken.

*By the Court.*—Judgment affirmed.