TURNBULL, Plaintiff in error, vs. THE STATE, Defendant in error.

*April 5—April 30, 1935.*

For the plaintiff in error there was a brief by *Douglas & Omernik* of Spooner, and oral argument by *Mr. Douglas.*

For the defendant in error there was a brief by *J. C. Davis,* district attorney of Sawyer county, and oral argument by *Mr. Davis* and *Mr. J. E. Messerschmidt,* assistant attorney general.

NELSON, J. The information charged that on the 29th day of October, 1933, and on the 3d day of December, 1933, and at divers times between said dates, the defendant, a man over the age of fifty-nine years, did unlawfully and carnally know and abuse Thelma N. Wallace, a female under the age of eighteen years, to wit, of the age of fifteen years, against the peace and dignity of the state of Wisconsin.

Trial was had to the court and a jury. The jury returned a verdict of guilty. The court approved the verdict rendered, adjudged the defendant guilty of the crime charged, and sentenced him to the Wisconsin state prison.

The defendant earnestly contends that the verdict is not supported by the evidence, and that therefore he either should have been discharged or granted a new trial. The sole question for determination is whether the evidence adduced by the state, if believed by the jury and considered rationally, was sufficient to prove beyond a reasonable doubt that the defendant was guilty of the crime charged. On that question the defendant has the right to the deliberate opinion and judgment of this court. See *Parke v. State,* 204 Wis.

443, 235 N. W. 775. Since the question raised relates to the sufficiency of the evidence, it will be necessary to recite the facts.

In the fall of 1933, Thelma Wallace was in her sixteenth year. She was physically well developed and apparently worldly wise. For more than two years she had menstruated regularly. She resided with her father, Clyde Wallace, and her stepmother, Norma Eleanor Wallace, on a farm located in a sparsely settled part of Sawyer county. Mrs. Wallace, the stepmother, is a daughter of the defendant. At the time of the happenings which gave rise to this prosecution, the defendant was about fifty-nine years of age. Early in the fall of 1933, Mrs. Wallace went to Chicago. Later on, in October, her husband followed her there. During their absence it was arranged that Thelma would stay at the home of Tony Turnbull, whose home was located about a mile and a half from the Wallace home. Tony Turnbull is the son of the defendant. With Tony resided his wife and also his mother, who was the divorced wife of the defendant. In the same neighborhood a Mrs. Louis resided with her children, one of whom was named Wilbert, but who was commonly called "Billy Kendall." He was about eighteen years of age at that time and was a son of Mrs. Louis by her first husband. Upon the trial Thelma testified that on October 29, 1933, she and the defendant drove to her father's house which was then vacant; that on the way the defendant made indecent advances to her which she interpreted to be a suggestion that they have sexual intercourse; that after arriving at the Wallace home they got out of the car, looked around outside for a time, then got into the car and drove to Hall's store, where the defendant bought her some candy; that they then returned to the Wallace place and went into the house; that after a little while the defendant made amorous advances to her and suggested that they have sexual intercourse; that after she had folded up

several comforters which she intended taking to the Tony Turnbull home, the defendant requested her to go into the bedroom, where intercourse followed. She apparently willingly participated in the act. As to that first act she was fully examined and cross-examined. There were some discrepancies between her testimony upon the trial and that given at the preliminary examination. There were also discrepancies in her testimony as to the sequence of events, conversations, etc., leading up to the act of intercourse. She further testified that a second act of intercourse occurred at Hay Creek, where the defendant had requested her to go to see a beaver dam. According to Thelma's testimony, other acts of intercourse followed at her father's vacant house. Thelma evidently became pregnant after October 23d, the date of her last menstrual period. Mrs. Louis, hereinbefore mentioned, testified that late in November the defendant told her that Thelma had taken cold, and that she had missed her November period; that the defendant requested her to give Thelma a hot foot bath for the purpose of inducing menstruation, and that pursuant to such request she had given Thelma the suggested treatment. Mr. and Mrs. Wallace returned from Chicago on the 10th day of December. Thelma told her stepmother about her condition and that the defendant was responsible therefor. Mrs. Wallace told the defendant, her father, of Thelma's condition, and that Thelma had accused him. He denied having had improper relations with Thelma. Apparently neither Thelma's condition nor the accusation against the defendant gave rise to any particular excitement or feelings of anger or resentment. Concededly, no complaint was made to the district attorney at that time. In May, 1934, Thelma was taken to Chicago that she might be confined there. She contacted with and was served by the social service department of the Chicago Lying-In Hospital and Dispensary. Her child was born on

July 27, 1934. It is undisputed that Mrs. Wallace told Thelma to say that her name was Eleanor Wallace (the middle name of Mrs. Wallace). Thelma testified that Mrs. Wallace also told her to say that Billy Kendall was the father of her child. Mrs. Wallace testified that she told Thelma to state that John Kelly was the name of the father. That name was concededly chosen at random and belonged to no identified person. Thelma, however, informed the social service department that the father of her child was "Bill Kendall, aged 19, address Hayward, Wisconsin."

Shortly after the birth of the child she took it to her father's home. No criminal complaint was made until October 11, 1934. Some hearsay testimony was received without objection on the part of the state during Thelma's cross-examination, to the effect that shortly before the complaint was made to the district attorney her father was angry at the defendant because the former thought that the latter had stolen some of his hay, and that her father had attempted to have the defendant prosecuted for larceny. Mrs. Louis and her son Billy Kendall both testified that early in 1934 the defendant suggested to Billy that he make a date with Thelma, take her away in an automobile, and marry her.

The defendant admitted going to the vacant house with Thelma on several occasions, but denied any improper relations with her. He further denied that he asked Mrs. Louis to give Thelma a hot foot bath for the purpose of inducing menstruation. He further testified that feelings of enmity existed between the Wallace and Louis families.

In support of his contention that the evidence is insufficient to support the verdict, the defendant first points out the discrepancies in Thelma's testimony. These discrepancies in our opinion do not render her testimony incredible. Her positive and direct testimony as to the acts of intercourse was apparently unshaken. The defendant next contends that

the naming of Bill Kendall by Thelma as the father of her child pursuant to the request of the social service department mentioned for information is very impeaching. That circumstance would strongly tend to impeach her testimony were it not for the facts that the defendant was her stepgrandfather and she was, at the time, following the instructions which she asserts her stepmother gave her. Upon the trial Thelma denied that she had ever had intercourse with Billy Kendall, and he also positively corroborated her. The jury may well have believed when they were considering the testimony of Mrs. Wallace that "blood is thicker than water."

Under all of the circumstances, we think it was peculiarly for the jury to decide what weight should be given to the fact that Thelma had informed the Chicago authorities that Bill Kendall was the father of her child.

The defendant next contends that the failure to make complaint against him until October, 1934, militates against its truthfulness. It is a verity that some one had intercourse with Thelma in the fall of 1933. If ill.will existed between the Wallace and Louis families, as testified to by the defendant, it seems incredible that complaint would not have been lodged against Billy Kendall, if he was, in fact, the guilty one. Delay in making complaint against the defendant may have resulted from a desire on the part of the Wallaces to keep the matter a secret for Thelma's sake, or out of regard for the defendant, who was the father of Mrs. Wallace. The jury may well have concluded that Mrs. Wallace exercised considerable influence in the matter of making a complaint against her father.

Looking at the cold typewritten record alone, the several circumstances adverted to naturally arouse some suspicion. The jury, however, saw the witnesses and heard them testify. Its duty was to determine where the truth lay. The learned trial judge also saw the witnesses and heard them testify. He permitted the verdict to stand and thereby deliberately

gave his approval to it. Giving to the verdict of the jury and to the deliberate judgment of the trial judge such weight and consideration as they should be accorded under our system of jurisprudence, we cannot say that the verdict should be set aside and a new trial granted.

*By the Court.*—Judgment affirmed.