STATE, Plaintiff in error, vs. HANKS, Defendant in error.

*February 20—March 29, 1948.*

For the plaintiff in error there was a brief by the *Attorney General, William A. Platz,* assistant attorney general, and *John A. Moore,* district attorney of Winnebago county, and oral argument by *Mr. Platz* and *Mr. Moore.*

*Walter Melchior* of Appleton, for the defendant in error.

WICKHEM, J. On April 17, 1945, shortly after 8 o'clock in the evening defendant in error while driving his automobile north on Highway 47 in the town of Menasha ran down and killed Charles R. Zimmerman, a boy seventeen or eighteen years old, who was riding a bicycle in the same direction. Defendant in error was prosecuted under sec. 340.271(1), Stats., which provides:

"Any person who by operation of any vehicle while under the influence of alcoholic beverages or narcotic drugs shall cause the death of another shall be deemed guilty of negligent homicide. . . ."

The jury found defendant in error guilty but upon motions after verdict the trial court set aside the verdict and ordered a new trial. In its memorandum the trial court stated:

"There is a rule however that the testimony must establish the guilt of the defendant beyond a reasonable doubt of the jury and the court."

The court concluded that it could not permit a verdict to stand where "the court itself is not satisfied beyond a reasonable doubt of the guilt of the defendant." Since the trial court was not so convinced it applied the above rule and ordered a new trial.

A further reason assigned for its order was the conviction of the trial court that the jury was "inordinately influenced

by the inept statement of the defendant while on the witness stand in answer to a question by his own counsel."

There are thus two questions upon this appeal. The first one is whether upon the evidence presented the jury could find defendant guilty beyond a reasonable doubt.

At the outset it should be noted that the view of the trial court that it, as well as the jury, must be convinced beyond a reasonable doubt of defendant's guilt of the crime charged was error. In *Parke v. State*, 204 Wis. 443, 235 N. W. 775, it was held that the right of defendant is to the solemn and deliberate judgment of the trial court and of this court that his guilt was sufficiently proven. More specifically, defendant is entitled to the judgment of the trial court that there was adduced upon the trial evidence which if believed by the jury and rationally considered was sufficient to prove his guilt beyond a reasonable doubt. This is the extent of this right. Defendant has no right to demand that the trial court and every member of this court be affirmatively convinced of his guilt beyond a reasonable doubt. *Schlesak v. State*, 232 Wis. 510, 287 N. W. 703; *Turnbull v. State*, 218 Wis. 283, 260 N. W. 423; *Melli v. State*, 220 Wis. 419, 265 N. W. 79; *State v. Fricke*, 215 Wis. 661, 255 N. W. 724; *Garrity v. State*, 238 Wis. 253, 298 N. W. 577; *State v. Leppere*, 66 Wis. 355, 28 N. W. 376.

The second question is whether the trial court was entitled to conclude that certain testimony of defendant was inept and inadvertent and so influenced the jury as probably to result in his conviction. We shall deal with this question in its appropriate place in the opinion and shall proceed to examine the first question.

Defendant was employed and at the close of working hours went with a friend to the Polish Falcons Athletic Association club and bar at about 5:30 p. m. He there had two glasses of beer and a drink of whiskey. He then left with his friend to look at an automobile that the latter considered buying. He

returned to the same bar at about 7:30 and drank two whiskies with beer washes. He left the bar at about ten minutes to eight. The testimony of the bartenders and his companions was to the effect that he was perfectly sober at all times above referred to. He then got into his automobile and left for home. It was about two and one-tenth miles from the Association bar to the Fritsch farm which is on Highway 47. There is a curve approximately a half mile south of the Fritsch driveway and the road from there north for about a mile is straight and level. The highway is of black-top twenty-four feet in width with shoulders on the east and west sides measuring five and eight feet respectively. The accident happened about five hundred or six hundred feet south of the Fritsch driveway. Decedent was standing up pumping his bicycle when struck by defendant's car. According to an eyewitness the boy went over the hood and top of defendant's car and it is a conceded fact that the bicycle became engaged in the front bumper and was carried along by defendant's car until defendant stopped. Defendant made no effort to slow down for about five hundred feet or so and then within the next four hundred feet brought his car to a stop about two hundred feet north of the Fritsch driveway. He claims that he was blinded by the lights of two southbound vehicles; that he did not see the boy; that he did not know what he had struck until the noise of the bicycle contacting the front of his car directed his attention to the situation. One of the members of the Fritsch family, who was standing in his yard at the time and saw the accident, stated that it was light enough for him to see decedent and defendant; that it was getting to the time of night when drivers were beginning to put on their lights; that defendant's car struck the bicycle which became engaged in its bumper; that the boy went over the top of defendant's car; that defendant had been proceeding from fifty to sixty miles an hour; that he maintained this speed for about five hundred feet; that the witness being apprehensive that de-

fendant would not stop called his brothers to pursue him in the Fritsch car; that they did this but that defendant drew to a stop some two hundred feet past the driveway; that after the boy was struck defendant did not stop for about nine hundred feet. After the accident defendant came to the Fritsch farmhouse and the sheriff and two traffic officers appeared. Neither one of the three Fritsch brothers noticed anything indicating that defendant was intoxicated. Indeed, they did not detect any odor of liquor.

The sheriff and traffic officer, however, testified that they smelled liquor and the sheriff stated that after a brief talk with defendant he concluded that he was not in condition to talk; that he could not answer questions; that he showed signs of drinking; that his conclusion was that defendant was under the influence of liquor although on cross-examination he admits that he told defendant's attorney that defendant was under the influence of liquor but not drunk. Another traffic officer testified that he considered defendant to be definitely under the influence of liquor; that he had difficulty in lighting a cigarette and appeared to stagger after he came off the porch of the Fritsch house.

Defendant's testimony as to his drinking corresponds to what has heretofore been stated. While stating as heretofore noted that he was blinded by the lights of approaching automobiles he admits that he lost his head and did not stop as soon as he should have stopped. He was then asked by his counsel whether he was under the influence of liquor. He answered, "Well, I had them few drinks." He was then asked, "Were you under the influence of liquor?" His answer was, "Well, to a certain extent." The next question is, "Were you drunk?" Answer, "No, I was not." He was then asked, "Were you able to drive an automobile?" He answered, "Yes, sir." He was then asked, "In a normal manner?" This also defendant answered in the affirmative. He did not see the boy thrown up over the hood, denies that he could have

hit the windshield, claims that he could not see and did not appreciate what it was that was making a noise at the front end of his car until he had gone some distance.

The question is whether upon this testimony a jury could conclude beyond a reasonable doubt that defendant was operating his car under the influence of liquor. We are of the opinion that the jury could so conclude for the following reasons: (1) Defendant had had a considerable amount of liquor to drink immediately before the accident; (2) his testimony that there were two approaching cars which could have blinded him is rebutted by that of an eyewitness who testified that there was only one car approaching from an opposite direction and that this car was virtually even with the decedent by the time of the accident; (3) the fact that defendant did not make any effort to stop his car for five hundred feet and then was only able to appraise the situation and come to a stop some nine hundred feet from the place of the accident; (4) the length of time that it took defendant to see and identify the bicycle although parts of it were visible above the hood; (5) the testimony of the sheriff and officers that his conversation was thick, that he could not answer questions satisfactorily, that he appeared to stagger. From all this the jury could conclude that defendant was under the influence of liquor, that this impaired his capacity to drive and that this incapacity caused the accident and death. In other words, there was a jury question and the verdict cannot be disturbed. It is true that the bartender and his companion testified that he was sober. The bartender, however, could be considered by a jury to be somewhat biased because of the statute prohibiting him from selling liquor to persons already under its influence. The companion concededly had had as much to drink as defendant and the point need hardly be labored that a jury could somewhat discount his capacity to judge. The Fritsches did not even smell liquor on defendant and since he concededly had been drinking enough liquor to create the odor of it the

jury could be skeptical of the qualifications of these witnesses on this point.

The second ground of the trial court's action was that the portion of defendant's testimony heretofore quoted in which he said that he was under the influence of liquor to a certain extent was inadvertent and highly prejudicial. It was doubtless prejudicial but, far from being an inadvertent slip of the tongue (if, indeed, inadvertence is important), it appears to us to have been a reluctant but carefully considered admission that he was under the influence of liquor to some extent, coupled with the assertion that he was not drunk. Since the former is the standard of the statute the statement was entitled to be weighed by the jury with the other evidence and tends to fortify the jury's finding of guilty.

*By the Court.*—Order reversed, and cause remanded with directions to reinstate the verdict and impose sentence upon defendant in error.