WALSH, Plaintiff in error, vs. THE STATE, Defendant in error.

*March 10—April 3, 1928.*

*Homicide: Firing rifle at man: Degrees of murder: Premeditated design to effect death: Excusable homicide: Appeal: Immaterial error: Acquittal of first-degree murder: Conviction of lower offense on evidence sustaining higher one.*

1. In a prosecution for murder, evidence that defendant shot deceased, while hunting, from a place where he could have seen that deceased was a human being, together with evidence that defendant and deceased were political antagonists and had engaged in physical encounters, justified a conviction of defendant of murder in the second degree.  p. 543.

2. Evidence which would have sustained a finding that defendant fired a rifle at deceased, knowing he was shooting at a human being, would have sustained a conviction of murder in the first degree if the jury were satisfied beyond all reasonable doubt that the shooting was with a premeditated design to effect death; but if the jury had a reasonable doubt whether the shot was fired with such premeditated design, they were bound to give defendant the benefit of the doubt and acquit him of first-degree murder.  p. 543.

3. Second-degree murder is distinguished from first-degree murder by the absence of a premeditated design to effect death.  p. 543.

4. The firing of a high-powered rifle at an object which may plainly be seen to be a man, if it results in taking life, is the killing of a human being by an "act imminently dangerous, evincing a depraved mind, regardless of human life," under sec. 340.03, Stats., but if the shot was fired without a premeditated design to effect death the act would constitute second-degree murder.  p. 543.

5. Defendant, who was convicted of murder in the second degree, cannot complain and secure a reversal of the conviction because the jury gave him the benefit of the doubt by finding him guilty of a lower degree of homicide than first-degree murder, which would have been sustained by the evidence.  p. 543.

6. The rule that a judgment will not be reversed for error unless it affirmatively appears from the whole record that, had error not occurred, the result of the trial would probably have been materially more favorable to defendant, applies to criminal as well as to civil cases.  p. 544.

7. The act of shooting at an object which could plainly be seen to be a man is not an act done "with usual and ordinary caution and without any unlawful intent" so as to constitute excusable homicide under sec. 340.30, Stats.; and the refusal of the court to submit excusable homicide was not error.  p. 545.

ERROR to review a judgment of the circuit court for Taylor county: G. N. RISJORD, Circuit Judge. *Affirmed.*

*John Walsh* was convicted of murder in the second degree.  The crime was committed October 7, 1926.  Sentence was imposed March 29, 1927.

*John Walsh* lived in a sparsely settled portion of Taylor county where most of the lands were cut over and grown up with bushy second growth.  It was game country.  In the afternoon of October 7, 1926, he had taken his rifle for the purpose of securing some fresh meat for the family larder. He proceeded along a road whose sides were largely overgrown with second-growth trees and bushes.  When he came opposite the place where Amandus Kauss was piling ground pine in the brush about one hundred feet from the road, he shot at and killed Kauss.

The course of the bullet was traced by marks upon the tips of brush and the bark of a tree along the line which *Walsh* finally tacitly admitted was the true course of the fatal bullet.  The overwhelming weight of the testimony establishes the fact that one, standing in the road where *Walsh* stood when he shot, could see a man standing where Kauss was when the shot was fired and that he could tell that it was a human being.

Immediately after the shot was fired, the son of the deceased, who was helping his father gather the pine, called out.  *Walsh* did not go to the boy who called, but ran up the road away from the place.  He met a friend driving an automobile, told him that he had shot a partridge, got into the automobile, drove past the place where he fired the fatal shot, directed his friend's attention to the opposite side of the road as he passed the place of shooting by telling him that the

partridge was on the opposite side of the road, spent the rest of the afternoon hunting, and at the close of the day returned with the friend and passed the place where the shot was fired. By that time a number of men had gathered at the place of the tragedy. *Walsh* there made statements with the purpose of shielding himself. Next day, after his arrest, he pointed out a place on the same side of the road on which the deceased was at which he said he stood when he shot the partridge. He also designated the place where the partridge was when the shot was fired. These two points establish a bullet line which would have made it impossible for the bullet to have hit the deceased. After he had been in jail some time he stated that his story as to the shooting at the partridge was untrue and said that when he shot that he thought that the object at which he shot was a bear.

The defendant and the deceased had been political antagonists for some years in contests for local town offices. Deceased had always been the victor in these political contests. These men had also been antagonists in a physical encounter in which the deceased was likewise the victor. Defendant, when under the influence of liquor, had made threats that he would get the deceased some day,— put a bullet through him.

The court submitted first and second-degree murder and fourth-degree manslaughter and instructed the jury fully as to its duty to render a verdict of not guilty if no one of these degrees of homicide was established beyond reasonable doubt. The jury found the defendant guilty of murder in the second degree.

*W. E. Wagener* of Sturgeon Bay, for the plaintiff in error.

For the defendant in error there was a brief by the *Attorney General, J. E. Messerschmidt,* assistant attorney general, *K. J. Urquhart,* special assistant district attorney, and *T. W. Andresen,* district attorney of Taylor county, and oral argument by *Mr. Messerschmidt.*

STEVENS, J. (1) The defendant contends that the evidence does not support a verdict of second-degree murder. The evidence would sustain the finding that the defendant shot the deceased knowing that he was shooting at a human being. This state of facts would have sustained a conviction of murder in the first degree, if the jury were satisfied beyond all reasonable doubt that the shooting was with premeditated design to effect death. If the jury had a reasonable doubt as to whether the shot was fired with that premeditated design, they were bound to give the defendant the benefit of the doubt and acquit him of first-degree murder.

Second-degree murder is, among other things, distinguished from first-degree murder by the absence of this premeditated design. Under the facts in this case, it is the presence or absence of this premeditated design that distinguishes first and second-degree murder. The firing of a high-powered rifle at an object which may plainly be seen to be a man, if it results in the taking of life, is the killing of a human being which is "perpetrated by any act imminently dangerous to others, . . . evincing a depraved mind, regardless of human life." Sec. 340.03, Stats.; *Radej v. State*, 152 Wis. 503, 509, 510, 140 N. W. 21. If the shot was fired without premeditated design to effect death, the act clearly constituted murder in the second degree.

A careful review of the evidence satisfied the court that the defendant may consider himself fortunate that the jury gave him the benefit of the doubt as to the existence of a premeditated design and acquitted him of first-degree murder. Certainly he cannot complain and secure a reversal of the conviction because the jury have given him the benefit of the doubt and found him guilty of a lower degree of homicide than that which would have been sustained by the evidence.

"It must be remembered that murder in the second degree is included within murder in the first degree. The distinc-

tion between the two is presence in the latter of express malice, characterized by the call for 'premeditated design to effect the death of the person killed or of any human being,' and presence, only, in the former of implied malice, from the nature of the slayer's act—absence of the 'premeditated design' of the first degree.   Given all the elements of the second degree and the 'premeditated design' aforesaid, and the offense is raised to the higher degree."   *Radej v. State,* 152 Wis. 503, 510, 140 N. W. 21.   See, also, *Hogan v. State,* 36 Wis. 226, 237, 249.

The rule that no judgment will be reversed for any error unless it affirmatively appear from the whole record that, had the error not occurred, the result of the trial would probably have been materially more favorable to the defendant applies to a criminal as well as to a civil case.   "How can an accused person, by any possibility, be injured by a conviction of murder in the second degree when he should have been convicted of murder in the first degree?   What right has he to complain when the lower degree was found by reliance, to some extent, on his own testimony?"   *Radej v. State,* 152 Wis. 503, 515, 140 N. W. 21.

The defendant urges that the conviction must be reversed because, if the defendant is guilty of any degree of homicide, it must be murder in the first degree.   "Doubtless defendant would not have taken this position had he not known that he could play his game with loaded dice under the rule adopted in *State v. Martin,* 30 Wis. 216.   His purpose is to obtain a reversal and at the same time to save the benefit of the acquittal of murder in the first degree.   If defendant must be acquitted of all lesser degrees of homicide because guilty of murder in the first degree, then, although he is guilty of an offense which should be punished by imprisonment for life, the defendant must be given his freedom without undergoing punishment.   If the court must administer the rules of law so as to work such an injustice in the name of justice, it presents good reason for changing the rule as to former

jeopardy when the defendant asks and is granted a new trial. Fortunately no such miscarriage of justice need result in the application of the well established rules of law in this case." *Lasecki v. State,* 190 Wis. 274, 278, 208 N. W. 868.

(2) The second error alleged is the refusal of the court to submit excusable homicide. So far as material to this case, sec. 340.30 of the Statutes provides that "such homicide is excusable when committed by accident and misfortune, . . . or in doing any other lawful act by lawful means with usual and ordinary caution and without any unlawful intent." Doubtless hunting with a rifle is or may be a lawful act done by lawful means. But the act of shooting at an object which could plainly be seen to be a man is not an act done "with usual and ordinary caution and without any unlawful intent." It has been held that the use of a dangerous weapon in taking human life, such as a revolver or rifle, precludes a finding of excusable homicide. *Duthey v. State,* 131 Wis. 178, 185, 111 N. W. 222.

The court is satisfied that the defendant had a fair and impartial trial, that his rights were fully protected, and that the conviction ought to stand.

*By the Court.*—Judgment affirmed.