STATE, Respondent, vs. KUICK, Appellant.

*April 16—May 11, 1948.*

*Samuel Sigman* of Appleton, for the appellant.

For the respondent there was a brief by the *Attorney General* and *William A. Platz,* assistant attorney general, and oral argument by *Mr. Platz.*

ROSENBERRY, C. J.    In this case the defendant's statement of facts is interwoven with immaterial matters, comment, argument; and stated in the third person, as is the appendix, so that resort must be had to the record to arrive at an accurate statement of facts.    The assistant attorney general made no statement of facts because he rightly assumed that the court would read the record, but that is not a sufficient excuse for a failure to state the material facts.

While the rule does not require a statement of facts an orderly presentation of a case to an appellate court involves a consideration of the material facts.    It is a great aid to the court in its consideration of the record if an accurate state-

ment of the material facts is presented with appropriate reference to the record. That is the general practice.

On February 17, 1947, at about 1:45 a. m., the Conoco filling station, at times referred to in the record as the Progress Oil Company station, in the city of Appleton, was entered by Claude Stead, aged seventeen, and Robert Lund, aged twenty-six, who thereafter held up the attendant, took $80 from the cash register and one of them struck the attendant on the back of his head with the butt of a revolver. About fourteen blocks away from the station, while they were walking northerly on Bennett street, Stead and Lund and the defendant were over-taken by the police and subsequently arrested and taken to the police station. Shortly after their arrival at the police station statements were taken from each of the parties under arrest. All three testified upon the trial of this defendant.

From the competent testimony offered and received on the trial the jury could properly have found that the defendant was associated with Stead for something like three months before the robbery; Stead introduced the defendant Lund a week before the robbery; two or three days later they met the defendant at Danny's Lunch; the three met on Saturday night, the night before the robbery, at Danny's Lunch; Margaret came in later and had been drinking; the three went to Druck's place. Margaret became intoxicated. When they returned to Danny's place from Druck's it was 2:15 Sunday morning. The three decided to go to Lund's home; when they arrived Mrs. Lund was there and the four of them slept in one bed that night; the next day the defendant, Stead, and Lund had a discussion with respect to where they could successfully bring off a robbery. They left the lunchroom about 1:30 a. m. for the Conoco station. When they arrived in the vicinity of the station the defendant was directed to go across the street and wait until she was rejoined by Stead and Lund. She knew what they were intending to do and that they were armed; that she was stationed across the street as a lookout while her two

companions were robbing the station. As already stated, shortly after the robbery, while they were leaving the vicinity of the robbery, they were apprehended and arrested. Lund resisted arrest and in the course of the attempt to take them into custody he shot and wounded one of the officers. At the time of the trial the defendant was eighteen years old. It further appears that during Friday, Saturday, and Sunday before the robbery the three persons involved were closely associated.

While the defendant denies that she was to act as a lookout or had any part in the commission of the robbery it is difficult to see why an eighteen-year-old girl would accompany two men on an expedition of this kind, knowing that they intended to commit a robbery, that they went armed; yet it appears without dispute that she asked to go along.

From all the circumstances the jury was clearly warranted in believing that she was fully informed as to the purpose of the other two parties and went along to be of such aid and assistance as occasion might require. While she had no whistle or other means of attracting their attention, according to her testimony, there is no explanation for her presence at the scene of the crime unless she was a participant in it. While there is evidence to the effect that the three intended to leave Appleton, certainly it was not necessary for her to be present during the course of the robbery in order to accomplish that.

There is ample evidence in the record to sustain the finding of the jury, and the judgment of the court must be affirmed unless there is reversible error in the record.

The principal error assigned is the admission of the confession of the defendant in evidence upon the trial. During the course of her examination by the officer at the police station the following questions were asked and she made the following replies:

"*Q.* You have had intercourse? *A.* Yes, about two years ago.
"*Q.* And since that time? *A.* No."

These questions and answers came after she had stated, without objection, that she and Lund's wife and Lund and Stead all slept in the same bed Saturday night. At the time the confession was received in evidence counsel for the defendant objected to its reception on the ground that it was not given voluntarily, that the defendant was in fear at the time, and on the further ground that it contained material that refers to her character and if admitted would be prejudicial. The district attorney suggested that the two questions already set out be excluded, whereupon counsel for the defendant objected to the use of the confession in parts. The court then stated: "It will be received in evidence." In response to the district attorney's suggestion that the two questions be excluded the court said: "You will have to let the whole thing go in. Apparently there are other portions which cannot be wiped out. It will be received in evidence." The admission of the confession, coming as it did after the testimony showed that she was with Stead and Lund Saturday until 2:15 the next morning, and as stated, slept at Lund's house that night, and that she had been associating with Stead for approximately three months, the reception of the matter objected to cannot be considered prejudicial.

Sec. 274.37, Stats., provides:

"No judgment shall be reversed or set aside or new trial granted in any action or proceeding, civil or criminal, on the ground of misdirection of the jury, or the improper admission of evidence, or for error as to any matter of pleading or procedure, unless in the opinion of the court to which the application is made, after an examination of the entire action or proceeding, it shall appear that the error complained of has affected the substantial rights of the party seeking to reverse or set aside the judgment. . . ."

This section applies to civil and criminal cases alike by its terms. This section has been in force since 1909 and has been considered by the court many times. The section was enacted

to enable the court to avoid reversals on account of errors which did not substantially affect the rights of the defendant. So it has been held that failure to give a requested instruction to the jury which might properly have been given is nonprejudicial error if there is no probability that the result would have been changed by granting the request. *E. L. Essley Machinery Co. v. First Trust Co.* (1915) 160 Wis. 300, 151 N. W. 814.

The admission of incompetent evidence in a trial by the court is not available on appeal unless it is the only evidence supporting some essential feature of the judgment. *Hannah v. Knuth* (1915), 161 Wis. 467, 154 N. W. 985.

In a criminal case where upon the evidence the jury could have failed to convict only by wantonly violating their official oaths, alleged errors in the charge were held nonprejudicial. *Ryan v. State* (1918), 168 Wis. 14, 168 N. W. 566; *Schwartz v. State* (1920), 171 Wis. 306, 177 N. W. 15; *Rogers v. State* (1923), 180 Wis. 568, 193 N. W. 612. Here the matter objected to merely affected the reputation of the defendant. It was collateral to the main issue and could not bear upon the question of her intent in accompanying Stead and Lund to the scene of the robbery. Other evidence in the case which came in without objection was much more prejudicial to the reputation and character of the defendant than was the statement made in her confession. Therefore it could not have substantially affected the determination of the jury upon the question of her guilt which was so clearly established. Bare technical error will not justify the disturbance of a verdict even in a conviction of a homicide. *Manna v. State* (1923), 179 Wis. 384, 192 N. W. 160.

The defendant also assigns as error the fact that no instruction warning the jury to disregard the immaterial part of the statement which was taken to the juryroom by the jury, was given by the court. The court instructed the jury as follows:

"If you believe that any confession in evidence was obtained by abuse, force, threats, coercion or while, according to the evidence, the defendant was under the influence of fear of physical punishment by those having her in custody, in other words if not a voluntary confession, then you should wholly reject any confession so made. You are instructed that a confession is a voluntary statement made at any time by a person admitting that he has committed the crime in question. In order to entitle it to be considered by the jury such confession must be the free and voluntary act of the defendant. This means that the confession must not have been obtained by any sort of threat or coercion or by any sort of violence practiced upon the accused."

At the time the statement of the defendant was received in evidence, among other things, the court said: "If it [the statement] is put together there on one sheet, you will have to leave it in and take care of it by the instructions." The court also said: "If that [referring to the two questions and answers] can be taken out of that confession it will be taken out. If it cannot be taken out the court will instruct the jury at the time of the instructions." While the defendant at the close of the trial requested certain instructions, no request was made applicable to that part of the confession objected to by the defendant during the course of the trial, nor did the counsel call the attention of the court to the promised instruction during the colloquy which preceded the closing of the case. It is considered, however, in view of the general instruction given as to the admissibility of the confession together with the fact that the statement objected to merely confirmed evidence already received in the case without objection, that the failure to give the promised instruction under the circumstances does not constitute prejudicial error.

Other errors are assigned, but upon examination of the whole record we find no prejudicial error and conclude that the judgment of the trial court should be affirmed.

*By the Court.*—Judgment affirmed.