POTMAN, Plaintiff in error, vs. THE STATE, Defendant in error.

*April 6—May 8, 1951.*

For the plaintiff in error there was a brief by *Flynn & Greenquist,* attorneys, and *William W. Storms* of counsel, all of Racine, and oral argument by *Gerald T. Flynn.*

For the defendant in error there was a brief by the *Attorney General* and *William Platz,* assistant attorney general, and *Edward A. Krenzke,* district attorney of Racine county, and *A. Lucareli,* assistant district attorney, and oral argument by *Mr. Platz, Mr. Krenzke,* and *Mr. Lucareli.*

FRITZ, C. J.   Sec. 351.24, Stats., provides:

"Any woman who shall conceal the death of any issue of her body which, if born alive, would be an illegitimate child, so that it may not be known whether such issue was born alive or not or whether it was not murdered, shall be punished by imprisonment in the county jail not more than one year nor less than six months, or by a fine not exceeding three hundred dollars nor less than one hundred dollars."

Upon the trial undisputed evidence established that after an accident on June 19, 1950, defendant's automobile was taken to a garage for repairs; that the keys were in the car; and that defendant called the garage and inquired when the car would be ready. On June 22d, an employee of the garage, who was working on the car, noticed a wheel was bent and upon opening the trunk of the car to get out a spare tire, an odor of putrefaction met him. He observed a satchel and a suitcase within the trunk, and the manager and another employee of the garage came to the car. They also observed

the satchel and suitcase and opened the former and poked into the contents with a screw driver. One employee took a bundle out of the satchel and tore off the coverings which exposed what looked like a small head. The manager called the police and when the officers arrived they went to the car and noticed that the trunk was closed but not locked. They noticed the odor and opened the trunk and concluded from the odor that there was a decomposed body within the trunk. The bundle was pointed out to the officer by the garage manager while it was in the trunk alongside of the satchel. A portion of the head was exposed from the bundle. The officer pulled the cloth away from the head and exposed the face of an infant and then closed the trunk. Other officers arrived with Dr. Schlepper, and he opened the trunk and took out the bundle and the satchel. Then the other suitcase in the trunk was opened and an identical bundle was noticed therein. The doctor examined the contents of the first bundle and found an infant covered with a white cloth similar to a nurse's uniform. It was about eighteen inches in length, was brown and mummified, and the doctor concluded that the infant was close to a full term. Pursuant to the assistant district attorney's directions the other suitcase was removed from the trunk, and in a bundle wrapped in dish towels, newspapers, and wrapping paper there was another human infant smaller and more decomposed than the first. Upon an investigation made immediately as to the name of the registered owner of the automobile it appeared to be in the name of three women at Sunny Rest Sanatorium, and one of them was the defendant, Genevieve Potman. She was employed there as a nurse. Thereupon two police department detectives went to see her, and she readily agreed to accompany them to the station. They testified that on the way to the station the defendant wanted to know why she was wanted for questioning, and when they said it was because of what was in the trunk of her car, she began to cry and professed ignorance of what

they were talking about. The officers informed her of the infant bodies, and when she asked them what was going to happen to her they told her that it was up to her to clear the matter up, and one of the detectives asked her if the bodies were abortions. At this point, upon the trial of the case the defendant's counsel commenced objecting to testimony as to admissions on the part of defendant on the ground that the state had not established the *corpus delicti*. The court over-ruled the objections; and the detective then testified that defendant had answered they were abortions and that they were hers. It was proven on the trial that at the police station defendant was fully informed of her constitutional right to refuse to answer questions or speak otherwise; but that her voluntary statements could be used against her. Thereupon two police officers and the assistant district attorney questioned defendant at the police station and stenographic notes of the questions and answers were taken by an officer on the first occasion and subsequently by a secretary of the police department, and transcripts thereof were marked Exhibits K, L, and M. During the course of the trial the court permitted the state to introduce in evidence, over defendant's objections, questions and answers recorded in said transcripts to the following effect (so far as material here):

Defendant was single and had never been married. The two bodies found in the trunk were her infants. The first child discovered was born four or five years ago in her room at Sunny Rest Sanatorium, and the birth was natural and unassisted. She kept the child in a satchel in her clothes closet at said sanatorium until she went to St. Mary's Hospital and she took the satchel with her. The second child was born two or three years ago in her room at St. Mary's Hospital, and the birth was natural and unassisted. The second child was wrapped and placed in a suitcase in the clothes closet of her room. In April, 1950, she removed both bodies in their containers from St. Mary's Hospital and placed them in the trunk of her car. She had not disclosed the birth of either of her children to anyone; and did not

have a physician. She was sure the children were not living when they were born, and did not know what she was going to do with them. She put them in the trunk of the car and did not know why she did not bury them.

Although defendant's attorneys had previously objected to the introduction in evidence of the testimony in the transcripts marked Exhibits K, L, and M, they subsequently withdrew their objections to that testimony. In their brief on this appeal defendant's attorneys now state:

"During the trial the defense raised several objections to the manner in which the confessions were originally taken. These were subsequently waived by the defense, but no waiver was made of the objections to the admissions or confessions which were based upon the failure of the state to establish the *corpus delicti.*"

As there was that unqualified withdrawal by defendant's attorneys during the trial of their objections to Exhibits K, L, and M, without any limitation as to the effect of their waiver or to preserve any part of the objections previously made, all of said objections were thereby waived excepting their claim that the state had failed to prove the *corpus delicti.* Consequently, defendant's confessions in her statements at the police station are in evidence for all purposes.

On this appeal the first contention in defendant's brief is that because no search warrant was issued prior to the police officer's seeing the satchel and suitcase and the infants' bodies in the trunk of defendant's car, and a search of the car was not incidental to an arrest, and the officers opened the trunk and removed the evidence therein without authority of the defendant, the seizure of the evidence without a search warrant was in violation of sec. 11, art. I, Const.; and the admission thereof in evidence violated her rights under sec. 8, art. I, Const. That contention cannot be sustained. When the bodies were first discovered in the trunk, defendant's car was lawfully in the possession of the service garage for the

purposes of repair by its employees, and when in the course of the repair it became necessary to get a spare tire out of the trunk, the employee had a right to open the trunk to search for it. Neither the employees nor the manager of the garage were public officers, and when upon opening the trunk in their search for that lawful purpose their nostrils detected a putrid odor, they were justified in probing to find out what it was, and in calling the police officers to make such an investigation as they did upon their arrival. As the putrid and noxious odor was identified as characteristic of decomposed human bodies both the garage employees and the police were warranted in investigating the source of the odor. Consequently, as the infants' bodies were discovered by employees of the garage and their employer in the course of work which was being performed on defendant's car at her request, there was no such unlawful search or seizure as can be deemed a violation of defendant's constitutional rights; and their testimony as to what they did upon opening the automobile trunk to get the spare tire or wheel and finding there the satchel and suitcase and detecting the odor of dead human bodies, etc., was admissible on the trial; and as to that testimony there is not involved herein any question of unreasonable or unlawful search or seizure by any governmental public officer or agent. *Ware v. State,* 201 Wis. 425, 427, 428, 230 N. W. 80; *State ex rel. Alford v. Thorson,* 202 Wis. 31, 34, 231 N. W. 155; *Voluntary Assignment of H. M. Warner & Co.* 203 Wis. 65, 67, 233 N. W. 631; *Kidder v. Kidder,* 222 Wis. 183, 190, 191, 268 N. W. 221.

Moreover, the court was duly warranted in denying defendant's motion to suppress the evidence in question on the ground that the motion was not made within the time limited by sec. 355.09 (3) and (4), Stats. 1949, which read:

"(3) Defenses and objections based on defects in the institution of the proceedings, insufficiency of the information or indictment, . . . or the use of illegal means to secure

evidence (except confessions) must be raised before trial by motion or be deemed waived. But the court may, in its discretion entertain such motion at a later stage of the trial, in which case the defendant waives any jeopardy that may have attached. A motion to suppress evidence shall be so entertained, with waiver of jeopardy, when it appears that defendant is surprised by the state's possession of such evidence.

"(4) The motion shall be made before the plea is entered, unless the court permits it to be made within a reasonable time thereafter."

And a provision in sec. 363.025, Stats. 1949, reads:

"If the seizure was made illegally without a warrant, the motion may be made on that ground."

On July 12, 1950, a notice of arraignment was served on the defendant, and pursuant thereto she was arraigned on July 19, 1950, while represented by her attorneys; and on that date the original information was filed and defendant entered a plea of "not guilty." On September 2, 1950, defendant moved that the court grant defendant permission to have the bodies examined by competent doctors of her own choice, and the motion was granted with the condition that the examination was to be concluded prior to September 13, 1950, which was the date theretofore set for trial by the court. On September 11, 1950, defendant for the first time moved to suppress the evidence seized by the police officers from the trunk of her car, which included the bodies of the two infants. The district attorney moved that defendant's motion to suppress the evidence be denied for the reason that her motion was not made within the time limited by sec. 355.09 (3) and (4), Stats. On September 13, 1950, the court found that the motion to suppress the evidence was not timely made and ordered that the court would not entertain said motion; but that defendant might renew her motion to suppress at the time of the trial, with a waiver of jeopardy, at which time the court would rule on the motion as provided

in sec. 355.09 (3), Stats. The state offered evidence as to the manner of discovery of the bodies and their containers in the trunk of defendant's car. And in the course of Detective Nielsen's testimony defendant's counsel again moved to suppress the evidence on the ground that it had been seized illegally. After hearing arguments the court again denied the motion, stating as follows:

"The court finds first, that the motion interposed by the defendant is not a timely motion because it does not appear that the defendant is surprised by the state's possession of such evidence, and, aside from the lack of surprise present herein, the court in any event is of the opinion that the officers had probable cause and reasonable grounds to believe that a crime had been committed and was being committed prior to the search."

The statutory rule under sec. 355.09, Stats. 1949, that the motion to suppress must be made before pleading to the merits is a proper, necessary, and reasonable regulation as a matter of practice in the interests of the orderly conduct of the court proceedings. Under that statute a trial date can be set at the time of the arraignment with the assurance that defendant will not at the last minute make some dilatory motion in order to secure a postponement of the trial; and provision is made for the court to relax the rule and entertain the motion, within a reasonable time after the arraignment or even during the trial in proper cases. But the legislature has imposed a reasonable regulation by requiring that it be timely asserted or be deemed waived. In *State v. Warfield,* 184 Wis. 56, 62, 198 N. W. 854, the court stated:

"No motion was made to suppress the testimony obtained as the result of the unlawful search, or to have the property thus unlawfully seized restored to the defendant. *As a rule, courts require this motion to be made previous to the trial in order to avoid the necessity of entering upon a collateral inquiry during the course of the trial.* However, where the

offer of the evidence is accompanied with the disclosure showing that the evidence was obtained through a violation of the defendant's constitutional rights by an officer of the state, and under circumstances where the protection of a defendant in his constitutional rights does not involve an interruption of the usual course of the trial, the evidence should not be received even in the absence of a previous motion to suppress. *Gouled v. U. S.,* 255 U. S. 298, 41 Sup. Ct. 261; *Amos v. U. S.,* 255 U. S. 313, 41 Sup. Ct. 266."

It is contended on behalf of defendant that the judgment convicting her of the crimes charged in the information cannot be sustained because,—as her attorneys contend,—the state failed to establish the *corpus delicti* independent of her extrajudicial confessions or admissions. That would be true under the law in that respect in some American jurisdictions, but that is not the rule in this state. In *State v. DeHart,* 242 Wis. 562, 566, 8 N. W. (2d) 360, we stated:

"The *evidence furnished by the confession obviously established the corpus delicti, as well as defendant's guilt,* and we shall not labor the point. *While, without the confession, defendant would doubtless have been entitled to a directed verdict,* evidence as to the location and condition of the body, and expert testimony that the condition of the bones was consistent with buckshot wounds inflicted at close range, sufficiently corroborated the confession."

Thus, although it was possible to establish dehors the confession that a man had died, it was only by the defendant's extrajudicial confession that the state succeeded in establishing that the death had been feloniously caused. If in that case there had to be applied the rule contended for by defendant herein, viz., that the state had to establish the *corpus delicti* by proof independent of defendant's extrajudicial confessions or admissions, it would have resulted in a reversal of DeHart's conviction, instead of affirming the judgment in that case. And so likewise in the case at bar, it was not

necessary to establish the *corpus delicti* independent of the facts stated in her confessions and admissions which had to be proved to establish the commission of a crime in violation of sec. 351.24, Stats. Thus by defendant's confessions and admissions it was duly established that at the times stated in the information that she was single and had never married, and that she concealed the death of the two infants in question,—which were issues of her body and which if born alive would be illegitimate children,—so that it may not be known whether or not such issue was born alive or not or whether the infant was not murdered. The proof to that effect is all that was required to establish beyond a reasonable doubt that defendant was guilty of the crimes charged in the information.

*By the Court.*—Judgment affirmed.