STATE, Respondent, v. STEVENS, Appellant.

*January 8—February 2, 1965.*

454

For the appellant there was a brief by *Maurice Schmerling* of Kenosha, and *Myer H. Gladstone* of Chicago, Illinois, and oral argument by *Mr. Schmerling.*

For the respondent the cause was argued by *Betty R. Brown,* assistant attorney general, with whom on the brief were *George Thompson,* attorney general, *William A. Platz,* assistant attorney general, and *Joseph Molinaro,* district attorney of Kenosha county.

HALLOWS, J. On the appeal four questions are raised, did the trial court err: (1) In instructing the jury in referring to certain evidence that evidence of other crimes was received to identify the defendant; (2) in admitting state's Exhibit No. 1 in evidence; (3) in its examination of the jury on whether it heard an allegedly prejudicial radio broadcast concerning the defendant; and (4) did the evidence support the verdict?

During the course of the trial both Mr. and Mrs. Ventura identified the defendant as the person who had tricked them out of $3,000. For the purpose of identification of the defendant who had pleaded an alibi, the testimony of several other witnesses was offered and admitted. These witnesses testified the defendant attempted to perpetrate a similar fraud on them to obtain money by substantially the same procedure: Coming to their home, asking for an unknown person, telling them someone was ill in their home and she could cure the ill person, asking for a glass of water in which she put some material, asking for money so she could bless it, wrapping the money in a cloth, getting control of the money while supposedly leaving it in the house, sending the husband on an errand and getting the wife to leave the home, and then disappearing from the wife. In one instance the scheme was completed, in other instances the intended victim did not co-operate.

The defendant does not contend this evidence was not admissible for the limited purpose of identification although on oral argument some doubt was expressed of its admissibility. It is settled that evidence of other crimes or of the similarity of schemes of one charged with theft by fraudulent means may be admitted for the limited purpose of identifying the defendant by means of the method of operation as the person who committed the particular crime charged. Such evidence is not admissible for the purpose of proving the guilt of the defendant of the crime charged. However, the tendency to prove such guilt does not preclude the admissibility of the evidence for the purpose of identification if it has such probative value. *State v. Jackson* (1935), 219 Wis. 13, 261 N. W. 732; Anno. Evidence—Other Crimes—Identity, 63 A. L. R. 602, supplementing 3 A. L. R. 1540; 22 A. L. R. 1016; and 27 A. L. R. 357.

The complaint of the defendant is that the court in instructing the jury on the limited purpose of the admission of

the evidence committed error in referring to the evidence as other "crimes" when only one completed transaction or crime had been testified to. We consider there is no merit to this argument. The use of the word "crimes" instead of "crime and other evidence" in the instruction was not prejudicial. The other evidence was of such a nature that no added weight was imparted to it by including it within the word crime. We believe in view of the whole evidence there is no probability that a different result would have occurred if the trial court had not used the word "crimes." The possibility of a different result is not the equivalent of "has affected the substantial rights" required by sec. 274.37, Stats., for reversal. At the most, this was a bare technical error. *State v. Kuick* (1948), 252 Wis. 595, 32 N. W. (2d) 344; *Walsh v. State* (1928), 195 Wis. 540, 218 N. W. 714; *Pulaski v. State* (1964), 24 Wis. (2d) 450, 129 N. W. (2d) 204.

The defendant contends the state's Exhibit No. 1 consisting of substance found in her purse should not have been admitted in evidence on the ground it was obtained by an illegal search. The evidence was admitted by the trial court upon the basis it was obtained upon a search incidental to a valid arrest for disorderly conduct. After the defendant was arrested on November 9th she was booked and her property removed from her possession prior to being placed in a cell. A police officer made an inventory of her purse which had been taken from her. Shortly thereafter another police officer examined the purse and saw the material in the bottom of the purse which was later designated as state's Exhibit No. 1. This police officer knew the defendant and shortly before he had been called to a home in Kenosha and had been given some material which the defendant had discarded in the bathroom when a police officer had called at the house apparently looking for her. Mr. and Mrs. Ventura and other witnesses testified the material taken from the defendant's

purse was similar to the material the defendant had placed in the glass of water while perpetrating a fraud upon them.

The defendant contends the search of the purse was not an incident of the arrest and the arrest was not legal. The defendant did not move to suppress this evidence prior to trial as required by sec. 955.09 (3), Stats. However, the court in its discretion considered the issue at the time of trial which it had a right to do. *State v. Luczaj* (1960), 9 Wis. (2d) 199, 100 N. W. (2d) 368; *Potman v. State* (1951), 259 Wis. 234, 47 N. W. (2d) 884. The question of illegality of the arrest was not properly raised in the trial court and we must assume on this record. the arrest for disorderly conduct was valid. We agree with the defendant this search was not incidental to the arrest but it does not follow the seizure of the contents of the purse was illegal.

A search incidental to an arrest whether of the person or place must bear a reasonable relationship in time and place to the arrest. *Browne v. State* (1964), 24 Wis. (2d) 491, 129 N. W. (2d) 175, 131 N. W. (2d) 169; *Preston v. United States* (1964), 376 U. S. 364, 84 Sup. Ct. 881, 11 L. Ed. (2d) 777. Such a search being without a warrant is limited under the rules of reasonableness and fair play by the purpose or purposes for which the defendant was arrested. *Harris v. United States* (1947), 331 U. S. 145, 67 Sup. Ct. 1098, 91 L. Ed. 1399; *United States v. Rabinowitz* (1950), 339 U. S. 56, 70 Sup. Ct. 430, 94 L. Ed. 653. Within such scope of the search, instruments, evidence, and fruits of the crime for which the defendant was arrested may be searched for and seized. Likewise, weapons and instruments of escape may be searched for and taken to insure the safety of the arresting officers and the custody of the person arrested. *Agnello v. United States* (1925), 269 U. S. 20, 46 Sup. Ct. 4, 70 L. Ed. 145, 51 A. L. R. 409; *Browne v. State, supra; Stoner v. California* (1964), 376 U. S. 483, 84 Sup. Ct. 889, 11 L. Ed.

(2d) 856. If in the process of such reasonable search contraband or other material is found which may constitute evidence of other crimes, such contraband and material may be seized. *Abel v. United States* (1960), 362 U. S. 217, 80 Sup. Ct. 683, 4 L. Ed. (2d) 668. In *Barnes v. State* (1964), 25 Wis. (2d) 116, 130 N. W. (2d) 264, we pointed out that a search without a warrant but incidental to the arrest could not be used or enlarged for the purpose of seeking incriminating evidence of other crimes and held that it was unnecessary and unreasonable in the search of Barnes following his arrest for a traffic violation to search his pockets with a flashlight for remnants of marijuana. In *State v. Brown* (1964), 25 Wis. (2d) 413, 130 N. W. (2d) 760, we pointed out that in an arrest for a traffic violation the part of the body of a person arrested which was uncovered and open to inspection could be inspected and testified to, but the police without a warrant could not search those parts of the body which were covered and not open to general view. See also *Thornton v. State* (1903), 117 Wis. 338, 93 N. W. 1107; *Green Lake County v. Domes* (1945), 247 Wis. 90, 18 N. W. (2d) 348. One test of reasonableness seems to be whether the police are looking for incriminating evidence under an exploratory or rummaging search under the guise of a proper purpose incident to a lawful arrest. *Go-Bart Importing Co. v. United States* (1931), 282 U. S. 344; 51 Sup. Ct. 153, 75 L. Ed. 374; *United States v. Lefkowitz* (1932), 285 U. S. 452, 52 Sup. Ct. 420, 76 L. Ed. 877.

The examination of the defendant's purse at the police station was apparently made in accordance with a custom to inventory the personal effects kept for safekeeping by the police for one lawfully held in jail. Such an examination and inventorying of personal effects of a prisoner at the police station and not at the scene of arrest, and at some time remote from the arrest can hardly be justified under the tradi-

tional concept of being incidental to the arrest. In this case the legality of the seizure of the contents of the purse rests upon a custody search required for the safety of the prisoner and of law-enforcement officers and by the efficient operation and administration of a jail. For the extent to which prison-administrative rule may interfere with one's right of privacy, see *Lanza v. State of New York* (1962), 370 U. S. 139, 82 Sup. Ct. 1218, 8 L. Ed. (2d) 384.

The applicable principle is analogous to what might be called the fringe benefits of a valid search incidental to an arrest. It has been held, "When an article subject to lawful seizure properly comes into an officer's possession in the course of a lawful search it would be entirely without reason to say that he must return it because it was not one of the things it was his business to look for." *Abel v. United States, supra,* at page 238. In *Gray v. State* (1943), 243 Wis. 57, 9 N. W. (2d) 68, stolen articles of clothing found during a search incidental to the arrest for vagrancy were admissible in a burglary prosecution. On almost identical facts, it was held seizure some days after the arrest of property of an accused kept by the police for one in jail was valid on the ground of being incidental to the arrest. *Baskerville v. United States* (10th Cir. 1955), 227 Fed. (2d) 454. For greater reason, in custody examinations the material or objects which are not looked for but are on the person must be held to be validly seized in the process of incarcerating or jailing the defendant. Such type of search is referred to in *Charles v. United States* (9th Cir. 1960), 278 Fed. (2d) 386, 389, footnote 2. See also 1 Varon, Searches, Seizures and Immunities (1961), p. 196, in which the author states that any incriminating evidence obtained by the police in a custody search may be validly seized and used as evidence against the accused either upon the charge for which the arrest was made or upon an additional charge occasioned by the evidence. See also 51 A. L. R. 431; 32 A. L. R. 685.

Since the purse and other personal articles of the defendant were properly in the custody of the police for safekeeping, the police could seize what was in plain sight. Our examination of Exhibit No. 1 shows that it was of a character which was plainly visible to anyone opening the purse. However, if the police had examined the purse in search for evidence with the meticulous care that was used in the *Barnes Case,* such an examination would have become a search which would not be justified or within the reasonable scope of a custody search, because it would have had no reasonable relationship to custodial purposes.

The defendant complains there is error in the method used by the trial court in examining the jury to determine whether it had heard an allegedly prejudicial radio broadcast. After the jury was selected the court instructed it to refrain from listening to any broadcast and reading any articles in the newspaper until the conclusion of the case. At the opening of court the following day one of the defendant's counsel requested the court to poll the jury about whether any member had heard an allegedly prejudicial radio broadcast. The judge refused to poll the jury but questioned the jury *en bloc,* prefacing his remark with the reminder that he had admonished the jury the previous day not to listen to any broadcast concerning the trial. The court then asked whether anyone had heard the broadcast and no answer was made by the jury. The question was asked if any of them read about the case in the paper and no answer was made by the jury. In response to the question of whether the jury had followed the admonition closely there were voices from the jury box replying "Yes."

Counsel made no comment or objection on this procedure. He made no request that the judge examine each juror *in camera* nor did he move for a mistrial or repeat the request for a polling of the jury. No evidence was produced that any member of the jury had actually heard the broadcast. In

spite of this the defendant now complains the court should have questioned each juror individually and outside of the presence of the others and also that the court should not have mentioned the fact that it had previously told the jurors not to discuss the case or to read newspapers or listen to broadcasts, relying on *Marshall v. United States* (1959), 360 U. S. 310, 79 Sup. Ct. 1171, 3 L. Ed. (2d) 1250; *United States v. Levi* (7th Cir. 1949), 177 Fed. (2d) 833; and *Meyer v. Cadwalader* (1891), 49 Fed. 32.

*Marshall v. United States, supra,* acknowledges that in ruling on an issue of prejudice, the trial court has a large discretion as each case must necessarily turn on its special facts. In that case it was known that prejudicial news articles had reached several of the jurors and a new trial was ordered in spite of the fact the trial judge questioned the jurors separately. The case does not stand for the proposition the jurors must be examined separately on an issue of prejudice. In the *Levi Case* the jury was questioned *en bloc* concerning whether they had read a newspaper article. The episode happened before the jury and was in itself prejudicial whether the newspaper account was read or not. We do not consider this case even remotely holds that questioning a jury *en bloc* on the question of prejudice is error. In *Meyer,* the articles were so highly prejudicial the court considered the jury to be affected without making a finding that any juror in fact had read the articles. The evidence in the instant case falls far short of showing that any juror heard the broadcast or necessarily would hear the broadcast so as to make the *Meyer Case* analogous.

There is no dogmatic rule prescribing the procedure to be used in determining whether a jury was prejudiced by outside influences such as radio broadcasts or newspapers. The trial court must have some discretion in the method to be used in ascertaining the facts. Some cases may require each juror to be examined *in camera;* others, only a polling of

each juror while in the jury box or an examination *en bloc.* It is only essential the method adopted will result under the circumstances in a truthful response by the members of the jury. When no showing is made that the prejudicial material has reached the jury which has been previously instructed concerning newspapers and radio broadcasts, and there is only a suspicion or possibility that a juror might have read a prejudicial account in a newspaper or heard a prejudicial broadcast, a general *en bloc* questioning of the jury would seem to be sufficient. At least we cannot say as a matter of law such procedure is prohibited. *United States v. Micele* (7th Cir. 1964), 327 Fed. (2d) 222; see *State v. Moran* (Mont. 1963), 384 Pac. (2d) 777; *People v. Lambright* (1964), 36 Cal. Rptr. 851, 393 Pac. (2d) 409.

The last contention of the defendant is the evidence does not support the verdict of guilty. On an appeal in a criminal case the test of the sufficiency of the evidence for a conviction is "whether the evidence adduced, believed and rationally considered by the jury, was sufficient to prove the defendant's guilt beyond a reasonable doubt." *State v. Johnson* (1960), 11 Wis. (2d) 130, 137, 104 N. W. (2d) 379; *State v. John* (1960), 11 Wis. (2d) 1, 103 N. W. (2d) 304; *Parke v. State* (1931), 204 Wis. 443, 235 N. W. 775. This test has been phrased as in civil cases in shorthand form, "any credible evidence to sustain the verdict," but this must be understood to mean in a criminal case credible evidence sufficient to convince a jury beyond a reasonable doubt. In *State v. Nutley* (1964), 24 Wis. (2d) 527, 547, 129 N. W. (2d) 155, we stated that on appeal the test for the sufficiency of evidence in a criminal case is equivalent to the test applied in civil cases. This is correct in the sense that the sufficiency of the credible evidence in each case is tested on appeal in reference to the standard of proof applicable to the particular type of case under review. Language in *Nutley* which conveys the impression that any credible evidence is sufficient to

sustain a conviction on appeal is withdrawn. The sufficiency test does not require the members of this court to accept such credible evidence and become equally convinced of the guilt of the defendant beyond a reasonable doubt but only that the members of this court are satisfied that the jury on the credible evidence submitted could find the defendant guilty beyond a reasonable doubt. If so, the defendant's guilt was sufficiently proven. *State v. Hanks* (1948), 252 Wis. 414, 31 N. W. (2d) 596; *Parke v. State, supra.*

The basis of defendant's argument is principally that the jury should have accepted the testimony of alibi witnesses and would have except for a variety of reasons. True, several of the defendant's witnesses testified that on the day of the alleged crime she was with them at a party in Inkster, Michigan. While this testimony is not incredible, neither is the testimony of the state witnesses that the defendant was in Kenosha on the day of the alleged crime. The credibility of these witnesses and the weight to accord their conflicting testimony were properly a function for determination by the jury. *State v. Lombardi* (1959), 8 Wis. (2d) 421, 99 N. W. (2d) 829; *Schlesak v. State* (1939), 232 Wis. 510, 287 N. W. 703; *Clemens v. State* (1922), 176 Wis. 289, 185 N. W. 209. The reasons advanced for the jury's disbelief of the alibi are not grounds on the state of the record upon which this court can reverse. Testimony in defense of an alibi is not to be given any special or unusual weight but is to be considered together with all the other evidence by the jury. Such testimony does not raise a reasonable doubt as a matter of law. *State v. Grahn* (1963), 21 Wis. (2d) 49, 123 N. W. (2d) 510; *State ex rel. Dewey v. Kibbe* (1925), 186 Wis. 210, 202 N. W. 333.

The other alleged errors are without merit and require no discussion.

*By the Court.*—Judgment affirmed.

WILKIE, J. (*concurring*). I would not resort to the "custody search" concept to justify the search in this case. As to this concept I share the misgivings of Mr. Justice GORDON. The defendant was arrested for disorderly conduct and taken into custody. The inventory that was then made of the contents of her purse, plus the later inspection that led to the discovery of the material, were investigations that were reasonably related to the crime for which she was originally arrested. In my judgment this search was reasonable.

GORDON, J. (*dissenting*). In approving the use of physical evidence gleaned during a so-called "custody search," the court has watered down the basic right against unreasonable search and seizure. Under the guise of taking an accused's property into protective custody, the police, by this decision, are authorized to seek out evidence which would otherwise be inviolate. Cf. *Barnes v. State* (1964), 25 Wis. (2d) 116, 126, 130 N. W. (2d) 264.

In the case at bar, an inventory was made of the accused's possessions just before she was placed in a cell. There is no evidence that the material in question was inventoried or that it was even observed at the time the inventory was made. Subsequently, however, a second police officer, who had been investigating the suspected crime, scrutinized Mrs. Stevens' property and observed the material at the bottom of her purse. The latter search had nothing to do with the efficient operation of the jail, nor was it designed to protect Mrs. Stevens' possessions when she was placed in the cell.

In my opinion, if a custody search is to be an approved method of obtaining admissible evidence, the standards surrounding it must be far more precisely defined than has been done in the instant case.